# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF SAMSUNG SMARTPHONE IN A BLUE AND BLACK CASE CURRENTLY LOCATED AT 369 NW HANEY RD, CHARLESTON, TENNESSEE | Case No. 1:22-mj-__10__ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Thomas Bagwell, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— electronic devices—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since January 2019. I am currently assigned to the ATF Chattanooga Field Office. I have approximately six and a half years of federal law enforcement experience. Prior to starting my career in federal law enforcement, I served four years in the United States Marine Corps. I also obtained a Bachelor of Science degree with a major in criminal justice from Dalton State College. I am a graduate of the United States Customs and Border Protection Officer Basic Training (CBPOBT), Criminal Investigator Training Program (CITP), Basic Deputy United States Marshal (BDUSM) Academy, and the ATF National Academy's Special Agent Training (SABT) Program, all of which were completed at the Federal Law Enforcement Training Center (FLETC). As a result of my training and experience in law

enforcement, I am familiar with federal criminal laws regarding firearms, explosives, arson, and illegal controlled substances. As an ATF Special Agent, I have conducted or participated in multiple investigations involving the criminal possession of firearms and distribution of illegal controlled substances

3. Based upon my training, experience, and participation in investigations involving controlled substances, I know that when controlled substances are illegally used, manufactured, and trafficked, other supporting items and materials are usually present in addition to the controlled substances themselves. These supporting items commonly associated with the use of and trafficking of controlled substances include, but are not limited to, drug paraphernalia, scales, and packaging materials suitable for particular substance(s); records and notes (including computer and electronically stored) of controlled substance transactions; money (proceeds of or capital for controlled substance(s) transactions); firearms kept for protection; stolen property (often traded for controlled substances); electronic devices suitable for use in controlled substance transactions, recordings of such transactions, or electronic devices suitable for avoiding law enforcement.

4. It is also common for traffickers of these substances to use electronic communication devices such as cellular telephones, pagers, both numeric and two-way, and computers so that they can conduct their business at virtually any time without unnecessary delay. I know that these devices are usually found on or in very close proximity to these persons and that such electronic devices are capable of storing information such as phone numbers and/or coded messages which may lead to the identity of codefendants, coconspirators, and/or sources of supply. Cellular phones, phone records, device purchase agreements and other related documents related to the ownership are normally kept at their businesses, and/or places of operation. It is also common for them keep their electronic communication devices and cellular telephones in close

proximity to themselves, on their person, in their vehicles, or at their business or place of operation. Cellular telephones, in addition to being communication devices, are also storage devices for data. Data electronically stored inside cellular telephones include telephone numbers of associates, logs of the date and time that individual calls were made, voice and text messages from associates and photographs of the primary user, family members and associates, location information, internet browsing history, calendar entries, task lists, contact information, and other similar data. The data inside cellular telephones is evidence of such sales activity, demonstrates true ownership and control of the telephones, which can be registered to another person, and can be effectively used to corroborate the statements of witnesses. With the advent of "smart phones" all of the documents and information discussed within this section can be held on a smart phone in electronic format as well.

5. Based on my training and experience in conducting investigations involving controlled substances, I also know that drug dealers, while utilizing electronic communication devices to conduct their business, will often use "slang," or "code words" when referring to their business activities. These code words may include reference to, but are not limited to, money, narcotics, other co-conspirators, and certain locations. Drug dealers use these code words in an attempt to conceal their illegal activities from law enforcement in an effort to avoid detection. I am also aware that specific slang and code words utilized by those trafficking in controlled substances may be influenced by various factors such as geographical area, cultural influences, and the type of controlled substance being trafficked.

6. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

Page 3 of 11
Case 1:22-mj-00010-CHS   Document 2   Filed 01/14/22   Page 3 of 14   PageID #: 4

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The property to be searched is a black Samsung Smartphone with a blue and black case (hereinafter Device). The device is currently located at the Tenth Judicial District Drug and Violent Crime Task Force (hereinafter 10th DTF) Property and Evidence Room located at 369 NW Haney Road Charleston, Tennessee (hereinafter TN).

8. The applied-for warrant would authorize the forensic examination of the device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

9. Your affiant is currently investigating Douglas MCDONALD (hereinafter MCDONALD) for the illegal distribution of methamphetamine and the criminal possession of firearms.

10. On January 10, 2022, the 10th DTF served a state search warrant at MCDONALD's residence located at 249 County Road 315 Sweetwater, TN after utilizing a confidential informant (CI) to purchase methamphetamine from MCDONALD at the residence on at least two occasions. MCDONALD and Jadie Miller were located inside the residence and were detained by law enforcement. Both MCDONALD and Miller were advised of their Miranda rights, and MCDONALD requested to have an attorney present during questioning.

11. While searching the residence, law enforcement located approximately 7.7 grams of methamphetamine (field weight), approximately 22.1 grams of marijuana (field weight), and drug related paraphernalia indicative of narcotics distribution, such as digital scales and repackaging material. Law enforcement also located approximately $2,848.00 in United States Currency. Your affiant later examined the currency and determined that "buy money" provided to the CI by the 10th DTF to purchase methamphetamine from MCDONALD was comingled with

the currency recovered inside the residence. The device was located on the couch in the living room where MCDONALD was sleeping when he was initially encountered by law enforcement.

12. Four firearms were also found inside the residence. A 12-gauge shotgun, .22 caliber rifle, and .380 caliber pistol were recovered from MCDONALD's bedroom. An additional .22 caliber rifle was recovered from the living room.

13. Approximately 410 grams of suspected methamphetamine (field weight) was recovered from the floorboard of a General Motors Company (hereinafter GMC) truck bearing TN license plate 4Z78X2. The truck was located within the curtilage of the residence and was registered to MCDONALD.

14. Agent Roberts completed a State of TN Notice of Property Seizure and Forfeiture of Conveyances (SF-0539) with MCDONALD prior to departing from the residence. While completing the form, MCDONALD made a spontaneous utterance that the methamphetamine belonged to him. Agent Roberts sought clarification and asked MCDONALD if he was referring to the methamphetamine in the truck, and MCDONALD claimed that everything in the truck and residence belonged to him.

15. The device is currently in storage at the 10th DTF Property and Evidence Room located at 369 NW Haney Road, Charleston, TN. In my training and experience, I know that the device has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into the possession of the 10th DTF.

## TECHNICAL TERMS

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for

viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

      c.      Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

      d.      GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17. Based on my training, experience, and research, I know that the devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how

a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

21. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

22. Based on the facts detailed in this affidavit, I respectfully submit that there is probable cause to believe that evidence of the illegal distribution of narcotics in violation of Title 21 U.S.C. § 841(a)(1) and (b)(1)(D) will be found in the search and collection of the data from the device. Therefore, I request a search warrant authorizing the examination of the device described in Attachment A to seek the items described in Attachment B.

{SIGNATURES ON FOLLOWING PAGE}

Respectfully submitted,

*Thomas Bagwell*
Thomas Bagwell
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

SUBSCRIBED and SWORN to before me on _January 14_, 2022

_____
CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF SAMSUNG SMARTPHONE IN A BLUE AND BLACK CASE CURRENTLY LOCATED AT 369 NW HANEY RD, CHARLESTON, TENNESSEE | Case No. 1:22-mj-__10__ |

## ATTACHMENT A

The property to be searched is a black Samsung Smartphone with a blue and black case (hereinafter Device). The device is currently located at the 10th DTF Property and Evidence Room located at 369 NW Haney Road, Charleston, Tennessee. The device is listed as Item Number 008 in Case Number 220106-TF-011.

This warrant authorizes the forensic examination of the devices for the purpose of identifying the electronically stored information described in Attachment B.

Page 1 of 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF SAMSUNG SMARTPHONE IN A BLUE AND BLACK CASE CURRENTLY LOCATED AT 369 NW HANEY RD, CHARLESTON, TENNESSEE | Case No. 1:22-mj-_10_ |

## ATTACHMENT B

1. All records on the devices described in Attachment A that relate to violations of Title 21 U.S.C. § 841(a)(1) and (b)(1)(D) including:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. any information recording MCDONALD's schedule or travel;

    e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

Page 1 of 2

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.